USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __7/7/2025__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HERITAGE INTEGRITY INVESTMENT TRUST,

          Plaintiff,

  -against-

COMPUTERSHARE TRUST COMPANY, N.A. *et al.*,

          Defendant.

24-CV-9309 (JPC) (BCM)

**ORDER SCHEDULING ORAL ARGUMENT**

**BARBARA MOSES, United States Magistrate Judge.**

    Judge Moses will hear oral argument concerning the three pending motions described below.

### The Motion to Dismiss the SAC

    On November 7, 2024, plaintiff Heritage Integrity Investment Trust (Heritage) filed its Second Amended Complaint (SAC) (Dkt. 2-3) against various defendants, including Computershare Trust Company (Computershare) and Ruwack Irrevocable Trust (Ruwack).[1] Plaintiff claims to be the owner of certain unregistered, uncertificated debt securities issued by Ruwack (the Ruwack Notes). SAC ¶¶ 2, 21. Until the close of business on June 22, 2023, Computershare was Ruwack's transfer agent and registrar. *Id.* ¶ 30 & Ex. E. In the SAC, plaintiff alleges that the Ruwack Notes were "lost," *id.* ¶¶ 9, 39, and that Computershare is liable for that loss, in the amount of approximately $96 million, because (1) it violated its fiduciary duty to plaintiff by transferring its Ruwack files and records (including the records showing plaintiff's ownership of the Ruwack Notes) back to Ruwack on June 23, 2023, after Ruwack terminated Computershare's services as its transfer agent and registrar, *see* SAC ¶¶ 40-48 & Exs. D, E; and

---

[1] Plaintiff has since dismissed its claims against all of the defendants named in the SAC – including Ruwack – except Computershare. *See* Dkts. 23, 31, 83, 86.

(2) it violated SEC Rule 17Ad-2, which (according to plaintiff) requires transfer agents to "ensure that owners have proper access to their securities." *Id.* ¶ 64.

On February 7, 2025, Computershare moved to dismiss the claims against it pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. 32. Computershare argues, among other things, that: (1) as Ruwack's transfer agent and registrar it owed no fiduciary duty to the holders of Ruwack securities; and (2) there is no private right of action under SEC Rule 17Ad-2. *See* Dkt. 33 at 12-13, 18-24.

## **The Cross-Motion to Amend**

On April 1, 2025, plaintiff Heritage responded to the motion to dismiss the SAC by cross-moving for leave to further amend its pleading. Dkt. 61. The proposed Third Amended Complaint (Prop. TAC) (Dkt. 79) alleges different facts and asserts different claims against Computershare. According to the proposed TAC, the Ruwack Notes are no longer "lost." Rather, they are on the books and records of TransferOnline, Inc. (TransferOnline), Ruwack's new transfer agent. Prop. TAC ¶¶ 11-12. However, plaintiff asserts, it cannot sell the notes because Ruwack failed to apply for "full service" at the Depository Trust and Clearing Corporation (DTC), and Computershare "did not register the CUSIP of the securities" so as to enable Direct Registry Service. *Id.* ¶¶ 15-16. Plaintiff alleges that Computershare is liable to it for damages in the amount of approximately $96 million because (1) it breached its "duty of care" as Ruwack's transfer agent by failing to "comply with the DTC's Mandatory Exchange Procedure," failing to "ensure a proper transition" after Ruwack terminated its services, and "depriving [plaintiff] of market access" during the period when plaintiff thought the notes were lost, *id.* ¶¶ 52-63; (2) it breached its fiduciary duty as "the escrow agent for [plaintiff's] purchase of Ruwack's securities" by failing to "place the securities in DTC custody," *id.* ¶¶ 64-71; and (3) it made (unspecified) "material misrepresentations and

omissions regarding the DTC eligibility of the Ruwack securities," in violation of state law and SEC Rule 10b-5. *Id*. ¶¶ 72-76.

In its memorandum in support of its cross-motion, plaintiff does not so much as mention the SAC. *See* Dkt. 63. Moreover, although it (briefly) defends the adequacy of the claims pleaded in the proposed TAC, *see id*. at 1-4, it does not offer any substantive defense of the claims pleaded in the SAC. To the contrary: plaintiff concedes that transfer agents are "not typically considered fiduciaries" (which it why the proposed TAC charges it with negligence rather than breach of fiduciary duty in connection with the return of Ruwack's records and files to Ruwack). *Id*. at 2. Moreover, in a letter to the Court dated April 4, 2025, plaintiff's counsel wrote: "We do agree that we made an error in claiming that a private cause of action exists for Computershare's violation of SEC Rule 17Ad-2, and we have proposed to voluntarily withdraw that claim." Dkt. 72 at 2.[2]

On April 28, 2025, Computershare opposed the cross-motion, arguing that plaintiff unduly delayed in seeking leave to amend, *see* Dkt. 88 at 4-7; that it has litigated in bad faith, including by asserting claims in the SAC that "lacked any basis," *id*. at 8, and that further amendment would be futile because, among other things: (1) DTC's Mandatory Exchange Program applies only to "full DTC-eligible securities," and thus did not apply to the Ruwack Notes, which (as plaintiff concedes), "are not full DTC-eligible due to *Ruwack's* inaction," *id*. at 13 (all emphases added unless otherwise indicated); (2) as Ruwack's transfer agent and registrar, Computershare owed no "duty of care" to the holders of Ruwack securities, *id*. at 15-16; (3) as Ruwack's escrow agent (not plaintiff's) with respect to plaintiff's initial purchase of Ruwack Notes in 2020, Computershare did not owe plaintiff any fiduciary duty, *id*. at 19-24; (4) any otherwise-cognizable fiduciary duty claim arising out of Computershare's role as escrow agent in 2020 is time-barred by N.Y. C.P.L.R.

---

[2] Plaintiff has not, however, actually withdrawn the Rule 17Ad-2 claim. *See infra*.

§ 214(4), *id*. at 24; and (5) plaintiff's fraudulent misrepresentation claim fails because it does not identify the alleged misrepresentations with particularity, as required by Fed. R. Civ. P. 9(b), ands fails completely to allege reliance, loss causation, or (as required under Rule 10b-5) that the alleged misrepresentations caused plaintiff to purchase or sell securities. *Id*. at 26-29.

In its reply brief in support of its cross-motion to amend, filed on May 13, 2025, plaintiff Heritage concedes that "the statutory Mandatory Exchange Procedure might not apply to these securities," Dkt. 102 at 4, but insists, without citation to any authority, that Computershare had a duty of care to "update" the "CUSIP status" of the Ruwack Notes "to the DTC" as soon as an (unspecified) "restriction was taken off the Notes." *Id*. at 2, 4. Plaintiff further argues that Computershare, in its capacity as Ruwack's transfer agent, owed a duty of care to Heritage that required it to "notify Heritage of the transfer of its account to Ruwack," *id*. at 5[3]; and that it committed "a clear violation of Rule 10b-5" when it "knowingly held back material information from Heritage (that the securities would not be marketable), that Computershare knew was a motivating factor for Heritage's purchase of the Ruwack securities." *Id*. at 6.

### The Motion to Dismiss the Cross-Claims

On April 14, 2025, Computershare asserted cross-claims for indemnity and contribution against Ruwack and its President, Isaac Cain. Dkt. 82. On April 28, 2025, plaintiff moved to dismiss the cross-claims, *see* Dkts. 87, 104, noting that Fed. R. Civ. P. 13(g) "authorizes cross-claims only between existing co-parties," and arguing – among other things – that the cross-claims

---

[3] On this point, plaintiff cites a single case, from the District of Massachusetts, which says nothing about the duties owed by an issuer's transfer agent to the holders of the issuer's securities. *See Szulik v. State St. Bank & Tr. Co.*, 935 F. Supp. 2d 240, 247, 270-73 (D. Mass. 2013) (permitting plaintiffs to pursue claims sounding in negligence and gross negligence against the trust company that they engaged as custodian of their securities through "a series of custodial agreements" which stated, among other things, that the custodian would not be liable for losses in the account unless the losses were caused by the custodian's "negligence" or (in some contracts) "gross negligence").

4

were improper because, by the time Computershare filed them, Heritage had dismissed its claims against Ruwack and Cain, such that they were no longer "defendants in this action." Dkt. 87 at 2.

In its opposition brief (Dkt. 97), filed on May 5, 2025, Computershare disagreed, pointing out that the order dismissing plaintiff's claims against Ruwack was not entered until April 15, 2025, and the order dismissing the claims against Cain was not entered until April 28, 2025. *See id*. at 2 (referencing Dkts. 83, 86).[4]

On May 20, 2025, Heritage filed its reply brief in support of its motion to dismiss Computershare's cross-claims against Ruwack and Cain. In that brief plaintiff concedes that "[b]ecause Computershare made its crossclaim before the claims against Ruwack were permitted to be withdrawn, the Court retains jurisdiction of the crossclaim[s] . . . if the other requirements of Rule 13(g) are met." Dkt. 105 at 2. It goes on, however, to make a new argument: that the cross-claims should be dismissed because, "[a]t this point in time, *there are no operative claims against Computershare*." *Id*. at 2, 3. Plaintiff explains that "all of the claims against Computershare in the Second Amended Complaint *have already been dismissed*." *Id*. at 3. It repeats this point: "All claims against Computershare in the Second Amended Complaint *have been fully dismissed* (on Computershare's motion)." *Id*. And, it notes, "the Third Amended Complaint is not yet operative." *Id*. Therefore, it concludes, "Computershare cannot make a cross-claim," because "*there are no claims pending against it*." *Id*.

---

[4] It is well-settled that a cross-claim by one defendant against a second defendant, once properly asserted, may be maintained even if the plaintiff thereafter dismisses its claims against the second defendant. *See*, *e.g*., *Downing v. Tappan Zee Constructors, LLC*, 2017 WL 5468768, at *3 (S.D.N.Y. Nov. 14, 2017) ("A cross-claim, once properly made, does not require dismissal when the defendant to whom it was addressed ceases to be a co-defendant."); *Lipford v. New York Life Ins. Co*., 2003 WL 21313193, at *3 (S.D.N.Y. June 9, 2003) (collecting cases).

Plaintiff's reply brief is, of course, subject to Fed. R. Civ. P. 11(b) – as are all of its pleadings, motions, and other papers. *See* Fed. R. Civ. P. 11(a).

In their briefs in support of and in opposition to the motion to dismiss the cross-claims, neither Heritage nor Computershare addresses the threshold issue of standing; that is, whether Heritage has standing to challenge claims asserted against other parties. *See*, *e.g.*, *Nat'l Cas. Co. v. Jordache Enters., Inc.*, 848 F. Supp. 1112, 1119 (S.D.N.Y. 1994) (denying defendant Jordache's motion to dismiss the complaint "as against the other named defendants" for lack of standing to make the motion).

### The June 5 Conference

Notwithstanding plaintiff's concession that transfer agents are "not typically considered fiduciaries" (Dkt. 63 at 2), its admission that it "made an error" in asserting a damages claim under SEC Rule 17Ad-2 (Dkt. 72 at 2), and its contention (made for strategic advantage in support of its motion to dismiss Computershare's cross-claims) that there are "no operative claims against Computershare" (Dkt. 105 at 2, 3), plaintiff has steadfastly refused to withdraw the SAC or any portion thereof. At a conference on June 5, 2025, before the Hon. John P. Cronan, United States District Judge, the Court reminded plaintiff that "there's an order of motions," such that the validity of the SAC (if not withdrawn) "needs to be resolved first." Tr. of 6/5/25 Conf. (Dkt. 113) at 8:1-4. However, plaintiff's counsel expressly refused to withdraw the SAC until and unless "the third amended complaint is accepted." *Id.* at 10:22-25; *see also id*. at 11:6-7 ("I'm certainly not withdrawing the second amended complaint.").

At the conclusion of the June 5 conference, the district judge advised plaintiff's counsel to review "certain provisions in federal law that deal with filings that don't have a basis [or] multiply the proceedings unnecessarily, provisions like Rule 11 of the Federal Rule[s] of Civil Procedure

6

[and] 28, United States Code, Section 1927, and other provisions that deal with potential sanctions on attorneys." 6/5/25 Tr. at 17:14-21.[5]

## Issues for Oral Argument

All three motions described above are referred to Judge Moses. *See* Dkt. 41. Oral argument is scheduled for **July 14, 2025, at 10:00 a.m.**, in Courtroom 20A of the Daniel Patrick Moynihan United States Courthouse.

Counsel should be prepared to present argument as to all issues properly raised by their motion papers, as well as the question whether Heritage has standing to challenge the cross-claims asserted by Computershare against Ruwack and Cain.

Additionally, counsel for plaintiff should be prepared to explain how it is possible for Heritage, if acting in good faith, to (1) concede that it "made an error" in asserting one of the claims alleged against Computershare in the SAC (for purposes of its motion for leave to further amend its pleading), and (2) assert that "all" of the claims against Computershare in the SAC "have already been dismissed" (for purposes of its pending motion to dismiss Computershare's cross-claims), but

---

[5] Rule 11 authorizes a variety of sanctions against a party, its attorney, or both: (1) if a pleading or other paper is "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," (2) if the legal contentions therein are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," or (3) if the factual contentions therein do not have "evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(1)-(3). Section 1927 authorizes monetary sanctions against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously," 28 U.S.C. § 1927, including by failing to withdraw claims once it is clear that they lack merit. *See*, *e.g.*, *Baiul v. NBC Sports*, 708 Fed. App'x 710, 715 (2d Cir. 2017) (summary order); *Ke v. J R Sushi 2 Inc.,* 2022 WL 1496576, at *12 (S.D.N.Y. Feb. 7, 2022), *adopted*, 2022 WL 912231 (S.D.N.Y. Mar. 28, 2022); *Ji Li v. New Ichiro Sushi, Inc.*, 2020 WL 2094095, at *9-11 (S.D.N.Y. Apr. 30, 2020) *aff'd sub nom. Li v. New Ichiro Sushi Inc.*, 2021 WL 6105491 (2d Cir. Dec. 21, 2021) (summary order). Additionally, federal district courts may rely on their inherent power to sanction a party or attorney who "has made a false statement to the court and has done so in bad faith." *S.E.C. v. Smith*, 710 F.3d 87, 97 (2d Cir. 2013).

(3) refuse to withdraw the SAC or any portion thereof (for purposes of the pending motion to dismiss it), thus requiring the Court to expend judicial resources resolving that motion.

The Court does not require, and will not accept, additional briefing as to the pending motions (by letter or otherwise) prior to July 14, 2025. However, if plaintiff wishes to withdraw any of its pleadings, claims, motions, or contentions, it may so advise the Court by letter, without argument.

Dated: New York, New York
July 7, 2025

SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**